UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JORGE RODRIGUEZ,<br>    a/k/a, "King G,"<br><br>    Defendant | Criminal No. 19-CR-10459-RWZ |

**MEMORANDUM IN SUPPORT OF SENTENCING RECOMMENDATION AND RESPONSE TO OBJECTIONS TO PRESENTENCE REPORT**

The government submits the instant memorandum in support of its recommendation for 292 months of incarceration. Overall, the government's recommendation reflects the violence and ruin that this Defendant wrought in the City of New Bedford through his leadership in the Latin Kings. Based on the multiple trap houses pumping cocaine base into the community, and numerous shootings, robberies and street beatings that emanated from this Defendant's veritable drug empire operating under the auspices of the Latin Kings criminal enterprise, a 292 month sentence is no greater than necessary to accomplish the goals of sentencing.

## THE ADVISORY SENTENCING GUIDELINES

The government, Probation, and the Defendant offer competing offense level calculations. For the following reasons, the government suggests that its stated offense level of 39 set forth in the Plea Agreement is proper.

**I.  OFFENSE LEVEL CALCULATION IN PRESENTENCE REPORT**[1]

The government asserts that the stated offense level calculation set forth in the Plea

---

[1] References are as follows: presentence investigation report (PSR) are by paragraph (PSR ¶_) or page (PSR, p. _); and Exhibits 1 through 26 to this sentencing memorandum by number (Exhibit _). Since many of the exhibits are digital recordings, the government has filed a copy of the supporting exhibits with the clerk's office on compact disc. The U.S. Probation Department is referred to as "Probation."

1

Agreement should control. The government notes that that application of that offense level calculation vitiates much of the Defendant's objection to the credibility of CW-9 concerning the Defendant's personal participation in the acts of violence. <u>See</u> Exhibit A. The government recites that calculation here for completeness and ease of reference:

| | |
|---|---|
| <u>*Group One (OL 35):*</u> | *Conspiracy to Murder Victim 9* |
| *Base Offense Level*: | 33, because the object of the conspiracy was first degree murder, under USSG § 2A2.1(a)(1). |
| *Offense Characteristics*: | +2, because a victim suffered serious bodily injury, under USSG § 2A2.1(b)(1)(B). |
| <u>*Group Two (OL 36):*</u> | *Conspiracy to Manufacture, Distribute and Possess with Intent to Distribute Cocaine Base* |
| *Base Offense Level*: | 32, because the Defendant is responsible for at least 840 grams but less than 2800 grams of cocaine, under USSG § 2D1.1(c)(4) |
| *Offense Characteristics*: | +2, because the Defendant possessed a dangerous weapon, including a firearm, under USSG § 2D1.1(b)(1); |
| | +2, because the Defendant maintained a premises for the purposes of manufacturing or distributing a controlled substance, under USSG § 2D1.1(b)(12). |
| <u>*Role Adjustment:*</u> | +4, because the Defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, under USSG § 3B1.1(a) (PSR ¶115) |
| <u>*Multiple Offense Adjustment:*</u> | *Each group counts as one Unit, because they are within one offense level. Therefore, the Defendant is responsible for two Units, which results in the addition of 2 levels to Group Two.* |
| | Group Two is therefore Offense Level 42. |
| <u>*Acceptance of Responsibility:*</u> | The Defendant has promptly accepted responsibility and is entitled to the 3 level reduction under USSG 3E1.1 |
| **Total Offense Level:** | **39** |

The government agrees with Probation's calculation of the criminal history.

Criminal History Category:    3 points (PSR ¶¶242-251), Category II (PSR ¶251)

In total, the government asserts that the applicable Guidelines Sentence Range is 292-365 months.

## II.   THE DEFENDANT'S OBJECTIONS

The Defendant objects to virtually the entirety of the government's statement of offense conduct on the grounds that the source of the information was not credible. See PSR ¶¶174, 194 & 170-194.  In making these objections, the Defendant does not acknowledge the numerous recordings and related transcripts where the Defendant himself was captured on recording.  The Defendant also does not claim that the government has misquoted or misidentified his voice on the related recordings and transcripts, which the government offers in support of its sentencing memorandum as Exhibits 1 through 26.

## ARGUMENT

## I.   APPLICATION OF THE SENTENCING GUIDELINES

The government bears the burden of proving the facts "supporting an enhancement by a preponderance of the evidence." United States v. Damon, 595 F.3d 395, 399 (1st Cir.2010).  In finding the facts supporting an enhancement, "[a] sentencing court is entitled to rely on circumstantial evidence and draw plausible inferences therefrom." United States v. Marceau, 554 F.3d 24, 32 (1st Cir. 2009); United States v. Paneto, 661 F.3d 709, 716 (1st Cir. 2011).  The government asks the Court to overrule the Defendant's general and imprecise objections that erroneously claims c

### A.   General Objections to Reliance Upon CW-9

A sentencing court "must take pains to base [its] sentencing judgments upon reliable and accurate information." United States v. Tavano, 12 F.3d 301, 305 (1st Cir. 1993).  Thus, it may take into account "any information that has sufficient indicia of reliability." United States v. Díaz-Arroyo, 797 F.3d 125, 130 n.3 (1st Cir. 2015). In doing so, it has "wide discretion to decide whether particular evidence is sufficiently reliable to be used at sentencing." United States v. Cintrón-

3

Echautegui, 604 F.3d 1, 6 (1st Cir. 2010).

In this case, the Defendant's general objections to CW-9's testimony and information are based solely on the Defendant's contention that CW-9 lacks credibility. The government anticipated such an objection and in fact predicated the near entirety of its offense conduct recital on recordings that it submits in supports of the instant sentencing memorandum. Additionally, while claiming that the source of information lacks credibility, the Defendant's identification of victims and cooperating witnesses and familiarity with incidents of violence cuts against his claims. The Defendant is charged with conspiring with the other Latin Kings members in the operation of the violent enterprise. In making his own baseless claims against the cooperating witnesses as the source of the violence, he in fact tars himself since he participated in the operation of the enterprise and served in leadership positions of the enterprise as well.

    B.    **The Principal of Foreseeability Governs Relevant Conduct**

The Defendant makes general objections that he should not be held accountable for criminal activity committed by others in the enterprise, because he claims he did not have "any role in ordering or participating in this attempt to shoot Victim 9." Objection 5, PSR p. 88-90. To the contrary, the principal of foreseeability governs the relevant conduct for which the Defendant is held accountable. See USSG § 1B1.3(a)(1)(B). As the guidelines indicate:

> in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were
>
> > (i)    within the scope of the jointly undertaken criminal activity,
> >
> > (ii)    in furtherance of that criminal activity, and
> >
> > (iii)    reasonably foreseeable in connection with that criminal activity;
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

USSG § 1B1.3(a)(1)(B).

Here, of course, the Defendant agrees that the shootings, beatings, witness intimidation, and conspiracies to murder and shoot are within the scope of the conspiracy. The Defendant's recurring objection to the PSR is premised upon an argument that another coconspirator in the enterprise was responsible for ordering the enterprise commit these acts. See PSR ¶¶174-194.

In fact, there is no question from the numerous recordings that the Defendant knew that the conspiracies to murder, attempted murders, robberies, shootings, beatings, and other racketeering acts would be committed by coconspirators who were themselves members of the enterprise – he advised his gathered membership to not discuss those crimes over Facebook because it is "organized crime" and the group would exposed to "RICO" prosecution. See PSR ¶¶145-146. Indeed, he was captured on audio/video imploring a rival criminal enterprise to join forces and turn their energies against "snitches" and kill them, rather than "beef" with each other. See PSR ¶¶124-126 ("We should be helping each other"; "Beefin' with each other is not making nothing, cause what we're doing is worrying- you never know who's doing this in this shit."). Arguably, the various aggravated assaults, attempted murders, shootings, and robberies that ensued over the following months would be within the scope of relevant conduct and potentially individually grouped, since they are reasonably foreseeable acts between two gangs that are "banging with each other" with a "war going on." PSR ¶126.[2] As a result, the Court should overrule the Defendant's objections and determine that the offense level is 39, consistent with the government's position in the plea agreement.

---

[2] Given Probation's calculation that exceeds the permissible statutory maximum, specific inclusion of these acts would not necessarily affect the guidelines sentencing range.

## II.   THE SENTENCING FACTORS UNDER 18 U.S.C. § 3553 REQUIRE A SIGNIFICANT SENTENCE OF 292 MONTHS

Apart from the guidelines sentence range calculation, a significant sentence of 292 months is warranted for this Defendant. See 18 U.S.C. § 3553(a). The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2). Consideration of the § 3553(a) factors demonstrates that a sentence of 292 months (the low-end of the guidelines sentence range) is sufficient, but not greater than necessary, to meet the goals of sentencing.

Among those factors are the "nature and circumstances of the offense," promoting respect for the law, and providing just punishment. See 18 U.S.C. § 3553(a)(2)(A). The sentence must also afford "adequate deterrence" for both the defendant and others. See 18 U.S.C. § 3553(a)(2)(B) (the court may impose a sentence "to afford adequate deterrence to criminal conduct"). Lastly, the sentence must protect the public from the further crimes of the Defendant, and the level of violence and amount of drug distribution that the Defendant brought to bear in the City of New Bedford through his leadership of the Latin Kings. See 18 U.S.C. § 3553(a)(2)(C) ("protect the public from further crimes of the defendant"). On consideration of all these factors, a 292-month is the proper means to do so.

Oftentimes, the damage inflicted upon a community by crime is an aspect of sentencing that Courts must interpret and understand through analogy or, at times, conjecture. For example, the impact of a drug conspiracy is usually measured by the amount of drugs trafficked, or understood through estimated overdoses or addictions. Alternatively, the impact of a violent crime is frequently understood through the injuries suffered victim. This case has both drugs and victims of violent crime. Yet, this is a rare case in which the Defendant's efforts to instill terror and fear on the streets

6

of New Bedford were captured on recordings.

The May 28, 2018, shooting that took place on Holley Street was a specific attempt by the New Bedford Latin Kings to target an innocent civilian who simply did not want drug dealing in his driveway. See PSR ¶¶105-114; Exhibits 11, 12, 17 & 18. For the act of reporting the Latin Kings to the police, the victims in that incident were chased to their vehicle, surrounded, the tires were slashed, and they were shot multiple times. These victims continued to trust in the legal system and reported the crime to the police. Multiple members of the Latin Kings were charged in state court with the shooting, including three codefendants in this case.

Once these victims came forward, the Latin Kings worked to silence those victims and protect itself and its members from prosecution. They did so by further targeting the victims, and preventing these gunshot victims from seeking justice through the Massachusetts Court system. The Defendant was captured on a recorded phone call assuring the shooter that the enterprise has already acted to ensure its members will not face significant punish, and can expect leniency from the state court in terms of pretrial detention. The Defendant sounds confident that the shooter could potentially escape conviction through the efforts of the Latin Kings to intimidate the victims. The Defendant, leader the New Bedford Chapter at the time, does not mince words: the shooter's "face doesn't show" on the surveillance video and "the witness is not going to court either." See PSR ¶¶113; Exhibit 12, 18.

With its members captured on video attempting to murder two victims, the apparatus of the enterprise successfully worked to pressure the victims to not attend court. The state prosecutor's office was left without viable victims to testify and was unable to aggressively prosecute[3] without their assistance, despite the serious coordinated nature of the crime and victims suffering gunshot

---

[3] Jose Vasquez pleaded guilty to a lesser charge of malicious destruction of property. Mendez posted a $10,000 bail and his case remained pending in state court until adoption as part of this case.

7

wounds. This is understandable. Even if the members who participated in the attack were detained, dozens of members remained on the street, willing and able to further retaliate. Significantly, the U.S. Attorney has not been able to make contact with the victims either.

This Court should consider this incident in the context of a Defendant that literally controlled multiple trap houses, facilitating the drug dealing and violent crimes committed by the dozens of New Bedford Latin Kings members. The Defendant manufactured the cocaine base for distribution to the trap houses and is captured on video doing so multiple times, in multiple kilogram amounts. When anyone threatened to disrupt this well-honed-machine, they were targeted. The Holley Street victims[4] were but once instance; Victim 1 (PSR ¶¶115-119)[5] and Victim 9 were other instances, as were the numerous Gangster Disciples members that were shot at, beaten, and robbed – mostly on video recording – throughout 2019.

The Defendant organized and supported the individual members of the enterprise. It was the Defendant who admonished members on recording for missing Victim 9 in June 2019, telling them it should have been "one shot, one hit." See PSR ¶65; Exhibits 2 & 12. Later, it was the Defendant who was captured on recording advising the lower-level members to avoid using Facebook when communicating about the whereabouts of the rival gang members ("ops"), and "murder" and "guns" because "we are all going to get picked up in RICO, and all that crazy shit. We don't want, we don't want to do that, because it's Organized Crime, understand!" See PSR ¶¶145; Exhibits 10 & 20.

It was the Defendant, seeking common ground with the leaders of the Gangster Disciples, who advised the leaders of a rival criminal enterprise to turn their collective attention to persons cooperating with police, and "kill them." Again, the Defendant was captured on recording bluntly

---

[4] Notably, this incident took place at a time when the Defendant claims the cooperating witness was in custody. See PSR 173.

[5] Notably, this incident took place at a time when the Defendant claims the cooperating witness was in warrant status. See PSR 173.

stating his opinion that snitches should be murdered: "There's a whole bunch of snitches-if you want to be a good- there's a snitch out there! Go deal with the snitches out there! Go be- go kill them!" PSR ¶126; Exhibit 25. As the Holley Street incident made clear, cooperating with police and snitches threatened the Defendant's control of the neighborhood sand were of primary concern: "one of my people might snitch out, and then fuck everything up, go to the cops and everything, and then were all going down"; "One of your people might snitch out, and there's war going on and shit when we should be taking care of all the snitches out there." PSR ¶126; Exhibit 25.

  Of course, the war with the Gangster Disciples did commence, and the City and citizens of New Bedford suffered from the rampant violence committed by the Latin Kings. Members of the Latin Kings chased victims down in the street and beat them, robbed them, shot them, and dragged them out of cars in broad daylight in clear view of cameras to pummel them. See PSR ¶¶120-153. The brazen nature of the control that the Latin Kings exhibited in the streets is best exemplified by these numerous broad daylight shootings, beatings, and robberies that the New Bedford members committed with relative impunity while the Defendant was in charge.

  And then, once the crimes were complete and witnesses were unwilling to come forward or targeted for doing so, the Latin Kings took their message of fear and control to the internet. The New Bedford Latin Kings produced specific music videos chronicling their exploits in drug dealing, their loyalty, and their numbers. See D. 12-1, pp. 157-167 (detention affidavit). Later when the violence reached a fever-pitched, specific boasts about shooting rival gang members, taunting and identifying victims by name. See, e.g., PSR ¶152; D. 12-1.

  At center of this violence, drug dealing and destruction in New Bedford, and at the top of the Latin Kings in New Bedford was the Defendant. The Defendant's own words prove his all-encompassing leadership of the Kings in New Bedford: "every King[] in New Bedford report[s] to one person in New Bedford, there's not a whole bunch of different sets. You get what I'm saying? So if you throwing a crown to one of us it's just basically you're doing it to me too." PSR ¶125; Exhibit

9

25. And the offense conduct makes clear that those individuals who were reporting to the Defendant were extraordinarily violent, and carried out that violence on behalf of the New Bedford Kings, which the Defendant led.

The Defendant ran an extensive criminal enterprise, and derived profit, power and control of the streets on behalf of the Latin Kings. In sum, this enterprise created and perpetuated a culture of fear on the streets of New Bedford and it flowed from the network of trap houses this Defendant controlled and the kilograms of cocaine base that this Defendant manufactured and distributed.

The nature and circumstances of this Defendant's leadership and participation in the racketeering enterprise, even when considered solely in terms of what was captured on audio/video recording, justify a sentence of 292 months. A sentence of this length adequately reflects the seriousness of the offense and culpability that redounds to leadership. This Defendant was the leader of an enterprise responsible for terrorizing the community of New Bedford through drugs, violence, threats, and shootings. His reputation and burgeoning power in the gang since 2017 led to frequent appointments to state-wide leadership.

Mere fortuity prevented the numerous shootings committed by the New Bedford Latin Kings from reaching a much more tragic end. The community faced danger from the routine gunfire and beatings. The members of the community that did not personally experience gunfire on the streets of New Bedford, witnessed random violence committed by the Latin Kings members, and faced the prospect of increased addiction and associated crime in the City. Civilians that spoke up against this culture of fear and violence were targeted, and the individual members who perpetrated the violence were supported by the enterprise.

The Defendant, as leader, oversaw these witness intimidation and retaliation efforts, coordinated violence against rival gang members, and literal propaganda designed to spread the message of the Latin King's strength and ferocity over the internet. The Court should impose a sentence of 292 months that will adequately punish the Defendant, deter him from future crimes, and

deter others who would aspire to command of criminal enterprises of this breadth. Over the course of the Latin Kings time in New Bedford, the crimes committed by the enterprise slowly worked to destroy the community through addiction and violence.

## CONCLUSION

The Court should impose a sentence of 292 months of incarceration.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:

*/s/ Philip A. Mallard*
PHILIP A. MALLARD
Assistant U.S. Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston MA 02210
617-748-3674

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Philip A. Mallard*
PHILIP A. MALLARD

Date:   November 2, 2020                    Assistant U.S. Attorney

## List of Exhibits

1. New Bedford Police Report #17-7371, related to 6/19/17 Shooting
2. Transcript of 6/19/19 Recording Regarding Shooting of Victim 9
3. Still Images from Videos of Crack Cocaine Manufacturing, 5/30/19
4. Still Images from Videos of Crack Cocaine Manufacturing, 7/10/19
5. Still Images from Videos of Crack Cocaine Manufacturing, 7/31/19
6. Still Images from Videos of Crack Cocaine Manufacturing, 8/2/19
7. Still Images from Videos of Crack Cocaine Manufacturing, 8/7/19
8. Still Images of Recovered Firearms from Search of 103 Maple Street, New Bedford, MA
9. Log of Items Seized from Search of 103 Maple Street, New Bedford, MA
10. Transcript of 10/24/19 Recording Regarding Gangster Disciples
11. New Bedford Police Report #18-6940, related to 5/29/18 Shooting
12. Transcript of Session 54, 11/15/18 Interception Regarding Intimidation of Victims
13. New Bedford Police Report #19-5993, related to 5/28/19 Shooting

### Recordings

14. Recording of Beating of Victim 9 on 9/2/19
15. Recording of Beating of Philly on 9/2/19
16. Recording of 2/23/19 Phone Call with Jorge RODRIGUEZ
17. Surveillance Video of 5/29/18 Shooting
18. Recording of 11/15/18 Interception, Session 54
19. Recording of 7/30/19 Meeting with Cecchetelli
20. Recording of 10/24/19 Meeting of New Bedford Chapter
21. Recording of 2/23/19 Discussion with GD Leaders
22. Recording 8/30/19 Meeting, "Bloodbath"
23. Recording 6/19/19 Meeting, Regarding Shooting of Victim 9
24. Recording 9/2/19 Trial of Victim 9, Explaining Origin of Conflict
25. Recording from 2019-2-23 - Discussing Truce and Beating of Six
26. Recording of 2019-8-31 STATE TEAM MEETING - 'Prodigy as Inca. He Can Make that Call'